**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Enea Embedded Technology, Inc.; Enea AB,<br><br>Plaintiffs,<br><br>vs.<br><br>Eneas Corporation; Enea Embedded Technology, Inc.; Enea AB, Inc..; Enea, Inc.; Maurice Amidei, an individual; Anthony Amidei, an individual,<br><br>Defendants. | No. 08-CV-1595-PHX-GMS<br><br>**ORDER** |

Pending before the Court is the Motion to Dismiss of Defendants Eneas Corporation, Maurice Amidei, and Anthony Amidei. (Dkt. # 13.) Defendants Enea Embedded Technology, Inc., Enea AB, Inc., and Enea, Inc. joined in the motion. (Dkt. # 14.) For the reasons set forth below, the Court grants Defendants' motion.

**BACKGROUND**

**I.    Facts**

Plaintiff Enea AB is a Swedish corporation formed in 1968 with its principal place of business in Stockholm, Sweden. Plaintiff Enea AB is the parent and owner of Enea Software, AB, which is the parent and owner of TekSci, Inc. TekSci, Inc., which is qualified to transact business in Arizona under the name Enea Embedded Technologies, Inc., is the

1  parent and owner of Plaintiff Enea Embedded Technology, Inc. ("Enea Embedded").
2  Plaintiff Enea Embedded is a Texas corporation formed in 1993 with its principal place of
3  business in San Jose, California. Plaintiff Enea Embedded maintains offices in Chandler and
4  Phoenix, Arizona.

5  Plaintiffs are in the business of developing and distributing network software and
6  services for the global telecommunications industry. Notably, Plaintiffs' software has been
7  embedded in nearly one billion electronic devices, including nearly half of the world's
8  mobile phone handsets and base stations. Plaintiff Enea AB began selling its products and
9  services in the United States, using the ENEA mark, in 1997. On September 9, 2003, the
10 United States Patent and Trademark Office issued federal trademark registration No.
11 2,760,861 to Plaintiff Enea AB for the mark ENEA in connection with the manufacture, sale
12 and marketing of electronic apparatus and instruments, technology education, and
13 development/maintenance of computer programs and systems. The filing and priority date
14 for the ENEA trademark registration is November 8, 2001.

15 Defendant Eneas Corporation is a Texas corporation formed in 1993 with its principal
16 place of business in Texas. Defendant Eneas Corporation is owned by Defendant Maurice
17 Amidei, a resident of Houston, Texas. Defendants Enea Embedded Technology, Inc., Enea
18 AB, Inc., and Enea Inc. are Oklahoma corporations owned by Defendant Anthony Amidei
19 or Defendants Anthony and Maurice Amidei. Defendant Anthony Amidei is alleged to
20 reside in Oklahoma. Although Plaintiffs generally allege that Defendants have used the
21 ENEA trademark in connection with their services, they fail to allege what those services are
22 in either their Complaint (Dkt. # 1) or their Response to Defendants' Motion to Dismiss (Dkt.
23 # 29).

24 In 2006, Plaintiffs began a global effort to align all Enea AB subsidiaries under the
25 same name – Enea, Inc. Consequently, Plaintiff Enea Embedded filed an application with
26 the Texas Secretary of State requesting that its corporate name be changed to Enea, Inc.
27 However, because Defendant Eneas Corporation had previously been incorporated in Texas
28 in 1993 under a similar name, the Texas Secretary of State refused to grant the request unless

Defendant Eneas Corporation agreed to consent to the change. On October 6, 2006, counsel for Plaintiff Enea Embedded sent a letter to Defendants Eneas Corporation and Maurice Amidei requesting that Defendant Eneas Corporation consent to Plaintiff Enea Embedded's corporate name change. On January 31, 2007, Defendant Eneas Corporation, through Defendant Maurice Amidei, responded to Plaintiff Enea Embedded's consent request "inquir[ing] as to the consideration Defendant Eneas Corporation would receive for allowing the name change," and requesting detailed information about Plaintiff Enea Embedded's business and use of the ENEA mark in states other than Texas. (Dkt. # 1 ¶ 26.) On March 27, 2007, Defendant Eneas Corporation, through Maurice Amidei, sent another letter addressed to Plaintiff Enea AB to its Sweden and Arizona offices. The letter granted consent to Plaintiff Enea Embedded's corporate name change in Texas but "'insist[ed] that [Plaintiffs'] companies immediately cease and desist from using the name Enea, Eneas, or similar names' until an agreement could be made regarding Plaintiffs' 'future and past right to use Enea, Eneas or similar names.'" (Dkt. # 1¶ 29.)

During the time period in which the parties were corresponding by mail, Defendants pursued registration of various corporate names containing the ENEA mark in various states. On November 13, 2006, shortly after the consent request, Defendant Maurice Amidei filed applications with the Oklahoma Secretary of State to register ENEA AB, INC., ENEA INC., and ENEA EMBEDDED TECHNOLOGY, INC. as corporate names in Oklahoma. On February 28, 2007, Defendant Anthony Amidei, filed applications with the Arizona Corporation Commission to register ENEA AB, INC., ENEA INC., and ENEA EMBEDDED TECHNOLOGY, INC. as corporate names in Arizona. Plaintiffs, however, do not allege that Defendants are conducting any form of business under these corporate names or are otherwise using the ENEA mark in connection with the offering of goods or services.

In September of 2007, Plaintiff Enea Embedded requested that Defendants release the names registered with the Arizona Corporation Commission and requested that Defendants "disclose the circumstances under which Defendants would be willing to release the[] names." (*Id.* ¶ 31.) These requests were renewed by Plaintiff Enea Embedded by a letter

- 3 -

1 dated October 5, 2007.  On January 2, 2008, having received no response from Defendants, 2 Plaintiffs filed an application with the Arizona Corporation Commission for the corporate 3 name ENEA EMBEDDED TECHNOLOGY, INC.  This application was denied due to 4 Defendants' existing Arizona registration of the same name.

5 Plaintiffs also allege that in December of 2007, the Arizona Department of Economic 6 Security ("ADES") mailed a letter, which was intended for Plaintiff Enea Embedded's parent 7 company, Enea Embedded Technologies, Inc., but was mistakenly delivered to Defendants 8 Anthony Amidei and Enea Embedded Technology, Inc.  As a result, on April 4, 2008, 9 Defendant Anthony Amidei sent a letter to Plaintiff Enea AB on behalf of an entity entitled 10 ENEA EMBEDDED TECHNOLOGIES, INC., stating that "ADES had confused 'my 11 corporation' with Plaintiff Enea Embedded," and requesting "that Plaintiff Enea Embedded 12 cease from doing business using the name Enea Embedded Technologies, Inc." (*Id.* ¶ 36.) 13 On April 24, 2008, Plaintiff Enea AB responded demanding that Defendants "immediately 14 cancel all corporate registrations using the ENEA mark, and cease all further use of the 15 ENEA mark." (*Id.* ¶ 37.)

16 **II.    Procedural History**

17 On August 27, 2008, Plaintiffs filed their Complaint against Defendants alleging 18 statutory trademark infringement and unfair competition under the Lanham Act and common 19 law unfair competition under Arizona law.  (*Id.* ¶¶ 38-55.)  On November 3, 2008, 20 Defendants Maurice and Anthony Amidei and Eneas Corporation filed a motion to dismiss 21 to which the remaining defendant corporations joined.  (Dkt. ## 13, 14.)  Defendants seek 22 dismissal under Federal Rule of Civil Procedure 12(b) for lack of subject matter jurisdiction, 23 lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief 24 can be granted.  (*See* Dkt. # 13.)

25 **DISCUSSION**

26 In the Motion to Dismiss, Defendants present several different theories supporting 27 dismissal of Plaintiffs' Complaint.  Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 28 12(b)(6), Defendants argue that Plaintiffs' suit must be dismissed for lack of federal subject

1 matter jurisdiction or alternatively because Plaintiffs have failed to state a federal claim upon
2 which relief can be granted. (Dkt. # 13 at 3.)  Because subject matter jurisdiction is lacking,
3 the Court declines to address Plaintiffs alternative theories supporting dismissal.

**I.  Federal Rule of Civil Procedure 12(b)(1) Standard of Review**

Federal courts are courts of limited jurisdiction and federal subject mater jurisdiction must exist at the time an action is commenced. *See Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988).  Because of its import, lack of subject matter jurisdiction may be raised at any time by any party or by the court. *See* Fed. R. Civ. P. 12(h); *Attorneys Trust v. Videotape Computer Prods., Inc.*, 93 F.3d 593, 594-95 (9th Cir. 1996).  "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); *see Thornhill Publ'g Co. v. Gen. Tel. & Elecs.*, 594 F.2d 730, 733 (9th Cir. 1979).  "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone*, 373 F.3d at 1039.  Given the nature of a facial attack, a court is required to accept the allegations in the complaint as true and view them in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1988); *see also Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  A court, however, need not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Id.* (quotation omitted).

Plaintiffs assert that jurisdiction exists pursuant to 28 U.S.C. § 1331. (Dkt. # 1 ¶ 7.) Section 1331 grants subject matter jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the Untied States."  Unless a complaint presents a plausible

1  assertion of a substantial federal right, however, a federal court does not have jurisdiction.
2  *See Bell v. Hood*, 327 U.S. 678, 682-83 (1946) ("[A] suit may sometimes be dismissed for
3  want of jurisdiction where the alleged claim under the Constitution or federal statutes clearly
4  appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where
5  such a claim is wholly insubstantial and frivolous."); *Hagans v. Lavine*, 415 U.S. 528, 536-37
6  (1974) ("Over the years this Court has repeatedly held that the federal courts are without
7  power to entertain claims otherwise within their jurisdiction if they are so attenuated and
8  unsubstantial as to be absolutely devoid of merit . . . or no longer open to discussion."); *see,*
9  *e.g.*, *Banga v. Am. Express Cards*, No. 2:06-cv-0880-GEB-GGH-PS, 2007 WL 474182, at
10 *3 (E.D. Cal. Feb. 9, 2007) (dismissing a complaint for lack of subject matter jurisdiction
11 where the plaintiff's federal claim was outside the scope of the Lanham Act because the
12 plaintiff failed to allege a deceptive commercial statement); *Hancock Park Homeowners*
13 *Ass'n Est. 1948 v. Hancock Park Home Owners Ass'n*, No. CV 06-4584 SVW, 2006 WL
14 4532986, at *2 (C.D. Cal. Sept. 20, 2006) (dismissing a complaint for lack of subject matter
15 jurisdiction where the plaintiff's alleged federal claim was outside the scope of the Lanham
16 Act because the plaintiff failed to plead a commercial use of the plaintiff's trademark).

**II.    Count I – Federal Lanham Act Claims, 15 U.S.C. §§ 1114(1), 1125(a)**

In the Complaint, Plaintiffs plead federal trademark infringement and unfair competition claims based on the allegation that "Defendants have fraudulently adopted and used Plaintiffs' federally registered ENEA mark in interstate commerce by registering the ENEA mark . . . via the business names Enea, Inc., Enea Embedded Technology, Inc., and Enea AB, Inc., as well as Eneas Corporation." (Dkt. # 1 ¶ 41.) Plaintiffs further assert that "Defendants have . . . fraudulently adopted and used Plaintiffs' federally registered ENEA mark in interstate commerce and in connection with Defendants' services by corresponding with Plaintiffs using those names and offering to consent to Plaintiff Enea Embedded's name change to Enea, Inc. for consideration, declaring their exclusive use of those names in Arizona, and demanding that Plaintiffs cease from using those names." (*Id.* ¶ 42.) Plaintiffs

1 therefore conclude that they have "fully set forth their claim under the 'cognizable legal
2 theory' of trademark infringement, and at a level well above 'plausible.'" (Dkt. # 29 at 16.)

3 Defendants, however, "specifically deny they are engaged in any commerce which
4 is in competition with plaintiffs, and allege that they have not caused plaintiffs any
5 commercial or competitive injury." (Dkt. # 13 at 2.) Defendants argue that "[t]he Complaint
6 alleges infringement merely by label and conclusion or a formulaic recitation of element[s]
7 of a cause of action . . . assuming all the allegations in the Complaint are true." (Dkt. # 13
8 at 8.)

9 For infringement of federally registered marks, the Lanham Act requires the accused
10 use be "in connection with the sale, offering for sale, distribution or advertising of any goods
11 or services" in a context that is likely to cause confusion, mistake or deception.  15 U.S.C.
12 § 1114(1).  Similarly, for infringement of unregistered marks, the Lanham Act requires that
13 the accused use be "on or in connection with any goods or services" and be likely to cause
14 confusion, mistake or deception as to the affiliation, connection or association of the accused
15 person with the plaintiff or as to the origin of the "goods, services or commercial activities"
16 of the accused person.  15 U.S.C. § 1125(a)(1)(A).  In *Bosley Med. Inst., Inc. v. Kremer*, the
17 Ninth Circuit, interpreting the language of §§ 1114 and 1125(a), held that trademark
18 infringement claims under the Lanham Act "are subject to a commercial use requirement."
19 403 F.3d 672, 676 (9th Cir. 2005); *see also Lamparello v. Falwell*, 420 F.3d 309, 313 (4th
20 Cir. 2005) ("To prevail under [§ 1114(1) or § 1125(a)], the trademark holder must prove: (1)
21 that it possessed a mark; (2) that the opposing party used the mark; (3) that the opposing
22 party's use of the mark occurred 'in commerce'; (4) that the opposing party used the mark
23 'in connection with the sale, offering for sale, distribution, or advertising' of goods or
24 services; and (5) that the opposing party used the mark in a manner likely to confuse
25 consumers."); *Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687,
26 695 (6th Cir. 2003) ("If defendants are only using [plaintiff's] trademark in a 'non-
27 trademark' way – that is, in a way that does not identify the source of a product – then
28 trademark infringement and false designation of origin laws do not apply."); *New Kids on*

*the Block v. News Am. Publ'g, Inc.*, 971 F.2d 302, 307 (9th Cir. 1992) (holding that infringement laws "simply do not apply" to a "non-trademark use of a mark"). "The inclusion of [this] requirement[] in the Lanham Act serves the Act's purpose: 'to secure the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers.'" *Bosley*, 403 F.3d at 676 (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 774 (1992)).[1]

In *Bosley*, the Ninth Circuit was confronted with the issue of whether "the noncommercial use of a trademark as a domain name of a website . . . constitute[s] infringement under the Lanham Act." *Id.* at 674. The Court ultimately held that:

> The dangers that the Lanham Act was designed to address are simply not at issue in this case. The Lanham Act, expressly enacted to be applied in commercial contexts, does not prohibit all unauthorized uses of a trademark. [The defendant's] use of the [plaintiff's trademark] simply cannot mislead consumers into buying a competing product . . . .

*Id.* at 679-80.

The question before the Court, then, is whether Plaintiff's allegations, taken as true and viewed in the light most favorable to Plaintiff, are sufficient to satisfy the commercial

---

[1]J. Thomas McCarthy notes:

> Perhaps the reason that it is argued that a non-trademark use of another's mark is not an infringement is that a non-trademark use is highly unlikely to cause actionable confusion. To be an infringement, there must be a likelihood of confusion over source, sponsorship, affiliation or approval. This happens when the potential buyer is confronted with two similar designations, both of which are used as marks. That is, the viewer is confronted with two similar designations which in context tell the viewer that they identify and distinguish a single source. Because defendant is an imitative free rider, each of the contesting designations is used to identify, not a single source, but two different sources. This causes confusion and deception in the viewer's mind. This is trademark infringement.

4 J. Thomas McCarthy, *Trademarks and Unfair Competition* § 23:11.50 (4th ed. 2008).

1 use requirement of the Lanham Act; specifically, whether Defendants' alleged use of
2 Plaintiffs' ENEA trademark was "in connection with the sale of goods or services" such that
3 consumers may be misled in their purchasing decisions. This very issue was addressed in
4 the context of registering business names in *Hancock Park Homeowners Ass'n*, 2006 WL
5 4532986, and *Crown Realty & Development, Inc. v. Sandblom*, No. CV 06-1442-PHX-JAT,
6 2007 WL 177842 (D. Ariz. Jan. 22, 2007).

7 In *Hancock Park*, a clerical error led to the suspension of the plaintiff's corporate
8 name – HANCOCK PARK HOME OWNERS ASSOCIATION – with the California
9 Secretary of State. 2006 WL 4532986, at *1. Consequently, that corporate name, which also
10 was also used by the plaintiff as a service mark, became available to the public for
11 registration. *Id.* The defendant took advantage of the opportunity and registered the exact
12 name that the plaintiff had used as its corporate name and service mark. *Id.* As a result, the
13 plaintiff sued in federal court alleging federal question jurisdiction based on allegations that
14 the defendant had violated § 1125 of the Lanham Act. In dismissing the case for lack of
15 subject matter jurisdiction, the court held that the defendant's conduct was "outside the scope
16 of the Lanham Act" because the plaintiff failed to allege actions that "involve commercial
17 transactions in any sense" necessary to satisfy the commercial use requirement set forth in
18 *Bosley*. *Id.* at *2, *5.

19 In *Crown Realty*, the plaintiff, Crown Realty & Development Co., was a California-
20 based company that had major real estate holdings throughout the western states. *Crown
21 Realty*, 2007 WL 177842, at *1. A subsidiary of the plaintiff purchased the defendant's
22 home in connection with a development project. *Id.* Unhappy with the sale, the defendant
23 registered CROWN REALTY & DEVELOPMENT CO, LLC as an Arizona limited liability
24 company. *Id.* After the plaintiff demanded that the defendant stop using the registered name,
25 the defendant responded by suggesting that she would consider selling the name to the
26 plaintiff. *Id.* The plaintiff then sued in federal court, alleging that the defendant had violated
27 §§ 1114 and 1125 of the Lanham Act. In dismissing the case under Federal Rule of Civil
28 Procedure 12(b)(6), the court held that the Lanham Act "does not offer protection against the

1  type of behavior [the defendant] ha[d] exhibited [there]." *Id.* at \*2. Because the plaintiff
2  failed to plead allegations which would satisfy the commercial use requirement, the court
3  dismissed the Lanham Act claims "without prejudice to [the] [p]laintiff refiling should [the]
4  defendant] begin using the company name to sell goods or services." *Id.*

5  Other courts have reached similar conclusions. *See, e.g.*, *HQM, Ltd. v. Hatfield*, 71
6  F. Supp. 2d 500, 504-09 (D. Md. 1999) (holding that a plaintiff failed to state cognizable
7  claims of federal service mark infringement, federal unfair competition, common law unfair
8  competition, and federal dilution based upon the defendant's alleged registration of the
9  domain name HATFIELD.COM and alleged activation of the site for email purposes,
10 because the plaintiff failed to plead a commercial use of the HATFIELD mark or that the
11 mark was used in connection with any goods or services); *CNA Fin. Corp. v. Brown*, 922 F.
12 Supp. 567, 573-75 (M.D. Fla. 1996) (holding that the plaintiff was not entitled to relief for
13 claims of federal trademark infringement, federal unfair competition, and state law unfair
14 competition where the plaintiff registered a corporation under the name CNA INSURANCE
15 COMPANIES – a name very similar to the plaintiff's CNA and INSURANCE FROM CNA
16 service marks – but failed to prove that the defendant or his company had ever offered any
17 services using that name); *Int'l, L.P. v. Toeppen*, 945 F. Supp. 1296, 1303 (C.D. Cal. 1996)
18 ("Registration of a trade[mark] as a domain name, without more, is not a commercial use of
19 the trademark and therefore is not within the prohibitions of the Act."); *see also* 1 J. Thomas
20 McCarthy, *Trademarks and Unfair Competition* § 9.3 (4th ed. 2008) ("Since the basic issue
21 is likelihood of confusion, it will be important to determine whether the corporate or business
22 name at issue was known to the relevant class of buyers. . . . [I]f defendant's usage of the
23 contested mark or name is as a corporate or business name, it is important whether defendant
24 so uses its corporate name that customers would be aware of it. In some factual situations,
25 defendant's corporate name is not before the public so as to cause confusion, while use of
26 that name as a trademark *is* so used. In such cases, defendant may be enjoined from use of
27 the name as a mark, but not from use as a corporate name.") (citing *Sunbeam Furniture Corp.*
28

1 *v. Sunbeam Corp.*, 191 F.2d 141 (9th Cir. 1951); *Am. Heritage Life Ins. Co. v. Heritage Life
2 Ins. Co.*, 494 F.2d 3 (5th Cir. 1974)).

3 As in *Bosley*, *Hancock Park Homeowners Ass'n*, *Crown Realty*, and *CNA*,
4 Defendants' alleged use of the ENEA mark "simply cannot mislead consumers into buying
5 a competing product" as there is no allegation that Defendants' use of the mark is before the
6 public in connection with goods or services. Plaintiffs' allegations center on Defendants'
7 registration of ENEA AB, INC., ENEA INC., and ENEA EMBEDDED TECHNOLOGY,
8 INC. as corporate names in both Oklahoma and Arizona. Plaintiffs point out that
9 "Defendants . . . do not contest that [they] registered Plaintiffs' ENEA mark in Arizona, in
10 the exact same corporate forms as those Plaintiffs do business under, making confusion
11 inevitable." (Dkt. # 29 at 16.) Outside of the registrations, however, Plaintiff fails to allege
12 that Defendants are operating any type of businesses or conducting any advertising under any
13 of the registered names or otherwise using Plaintiffs' ENEA mark in connection with any
14 goods or services. Thus, absent a commercial use of the ENEA mark, consumer confusion
15 is rather unlikely – a stark difference from the "inevitable" characterization of Plaintiffs.

16 In the Complaint, Plaintiffs offer only the conclusory statements that Defendants' use
17 of the ENEA mark was a "commercial use" and "is likely to cause confusion, mistake or
18 deception among customers." (*See* Dkt. # 1 ¶¶ 41-44.) The Court, however, need not
19 "assume the truth of legal conclusions merely because they are cast in the form of factual
20 allegations." *Warren*, 328 F.3d at 1139. The factual basis of Plaintiffs' claims simply does
21 not support the legal conclusion of "commercial use," for there is no indication that
22 Defendants have used the ENEA mark as their own identifying trademark in a manner within
23 the scope of the Lanham Act. Because Plaintiffs have failed to allege any use of the ENEA
24 mark "in connection with the sale, offering for sale, distribution or advertising of any goods
25 or services," 15 U.S.C. § 1114(1), or "on or in connection with any goods or services," *id.*
26 § 1125(a), Plaintiffs failed to plead a plausible assertion of a substantial federal right. *See*
27 *Bell*, 327 U.S. at 682-83. Consequently, this Court does not have subject matter jurisdiction
28 pursuant to 28 U.S.C. § 1331.

This conclusion is unaffected by Plaintiffs' allegations that: (1) Defendants used Plaintiffs' mark in their correspondence with Plaintiffs; and (2) ADES mistakenly mailed a letter to Defendants Anthony Amidei and Enea Embedded Technology, Inc., which was intended to be delivered to Plaintiff Enea Embedded's parent company. *See Bosley*, 403 F.3d at 676 (citing *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924)) ("The Supreme Court has made it clear that trademark infringement law prevents only unauthorized used of a trademark in connection with a commercial transaction in which the trademark is being used to confuse potential consumers."). In neither circumstance was the ENEA mark being used by Defendants to confuse potential consumers.

Nor does the allegation that Defendants inquired into the consideration that Plaintiffs would be willing to offer for consent to Plaintiff Enea Embedded's desired corporate name change in Texas satisfy the commercial use requirement. Even if the inquiry was considered a commercial act, is was not a commercial use of the ENEA mark within the scope of the Lanham Act.[2] *See Bosley*, 403 F.3d at 679-80. The inquiry into consideration was not directed at Defendants' potential consumers, but rather was directed at the owners and users of the ENEA mark.

### III.    Count II – State Law Unfair Competition

Plaintiffs assert subject matter jurisdiction over their state law unfair competition claim pursuant to 28 U.S.C. § 1338. Section 1338 grants the district court "original

---

[2] Alternatively, even if Defendants' inquiry into the consideration that Plaintiffs would pay for consent to the corporate name change in Texas could be construed as a commercial use of the ENEA mark such that subject matter jurisdiction would exist, Plaintiffs' federal claims must nevertheless be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted. *See Murray v. Cable Nat'l Broad. Co.*, 86 F.3d 858, (9th Cir. 1996) (holding that a district court may decide whether a likelihood of confusion exists on the face of the pleadings and dismiss a complaint "[if] the court determines . . . that the goods are unrelated and confusion is unlikely"); *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979) ("If the goods are totally unrelated, there can be no infringement because confusion is unlikely."). Defendants' alleged offer to sell consent to a corporate name change to Plaintiffs simply could not result in the confusion of the very owners of the trademark in question.

1  jurisdiction of any civil action asserting a claim of unfair competition when joined with a
2  substantial and related claim under . . . trademark law[]."  Because Plaintiffs' Complaint
3  failed to plead a substantial and related claim under trademark law, however, § 1338 is not
4  triggered and the Court has no choice but to dismiss Plaintiffs' state law unfair competition
5  claim as well.  *See Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 806 (9th
6  Cir. 2001) ("This requirement that the supplemental state-law claims be dismissed where the
7  district court had no underlying original jurisdiction must be distinguished from the district
8  court's discretionary authority to retain jurisdiction over state-law claims where it has
9  dismissed on the merits federal claims over which it did have original jurisdiction.").

## IV.   Defendants' Counterclaim

In the Motion to Dismiss, Defendants present what they refer to as a counterclaim:

> [Defendants] are entitled to and pray for: (a) a permanent injunction enjoining plaintiffs from using the name Eneas or Enea for commercial or corporation purposes; (b) an order for the plaintiffs to account for any profits derived by using the corporation name including Eneas or Enea during the previous two years; (c) such other relief as is just and proper.

(Dkt. # 13 at 15-16.)  In response, Plaintiffs move to dismiss Defendants' "counterclaim" for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (Dkt. # 29 at 18).  In reply, Defendants state that they "intend to either amend their counterclaim[] or dismiss same[.]" (Dkt. # 31 at 19.)  To the extent that Defendants have plead any counterclaims, they are dismissed for failure to plead any cognizable legal theory or the factual basis for their claims.

## CONCLUSION

Because Plaintiffs failed to plead a commercial use of the ENEA trademark by Defendants, the Complaint fails to present a plausible assertion of a substantial federal right and this Court, therefore, does not have jurisdiction over the action.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss (Dkt. # 13), pursuant to Federal Rule 12(b)(1), is **GRANTED WITHOUT PREJUDICE** to Plaintiffs refiling should Defendants engage in a "commercial use" of the ENEA trademark.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Dismiss Defendants' counterclaims (Dkt. # 29) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court is directed to **terminate** this action.

DATED this 10th day of March, 2009.

G. Murray Snow
United States District Judge